Case number 13-7181, Matthew Maggio, Appellant v. Wisconsin Ave. Psychiatric Center, Inc. Mr. Dahle for the Appellant, Mr. Block for the Appellee. Good morning. Good morning. May it please the Court, On behalf of Appellant Matthew Maggio, The issue before the Court is fairly simple. The lower court held that neither me nor my client communicated with the DCOHR or the EEOC in regards to his legal representation. That clearly is not the case. When me and my client firstly visited the Office of Human Rights, we told the investigative officer, Ms. Martin, that I'm the counsel and that all future correspondences on this matter are to be sent to me only. Despite that instruction, the right to sue was sent to my client's address, who by then, or by that time here, had already moved. So, the central issue is, does equitable tolling apply? Hadn't he actually moved before he gave him the address? I'm sorry? Wasn't the record that he had actually left that address before he gave it to the agency? He was, it's like I mentioned in my brief, Judge, he was in between residences. It's almost, I would consider him almost homeless, because his parental home in South Carolina was in the midst of being placed in the market. His home here in DC, he had moved to be closer to his mother, was, I mentioned, was suffering from Alzheimer's. So, he didn't really have a permanent address. And when my client asked me which address should I provide, my question to him was simple. Where are you getting your mail presently? And he said, well, it's a DC address. I go, all right, then let's go ahead and mention that. And more importantly, since we are going to be going to the OHR, I told specifically to the OHR officer, my client's moving, these are the circumstances. But you didn't tell the EEOC specifically? Well, I did not tell the EEOC, because my complaint was filed with the OHR. So, under the work share agreement, that communication, to my understanding, should have been communicated to the EEOC. And more importantly, in the Form 5, which was sent over to the EEOC, it did make a note of Matthew Maggio, care of my name and then my... So, the OHR form had a place to list, are you represented by counsel? Yes. Who counsel is, name and address? Yes. The EEOC Form 5 does not have that. And that's caused the problem in part here. Yes. I have a question, though. In Apelli's brief, Apelli cited this court's precedent on equitable tolling. Which makes clear that our standard is different than the standard in the 11th Circuit, which is what the district court relied on. Why didn't you respond to that? You respond by saying you're not going to spend your time distinguishing cases because they are distinguishable. But this is a question of law. Did the district court apply the correct standard in determining whether or not you were eligible for, or your client was eligible for, equitable tolling? It would help if the judge could tell me which case this is. Well, it cited Dyson. Cites Dyson on page 19 of the red brief, and it quotes what we said in Dyson. And it also has another case of Cord, Smith, Haney. And it says what our standard is. The district court, however, cited an 11th Circuit case that establishes a different standard. I don't see anything in your reply brief responding to that, and I just wondered why not. Well, I think in looking at the quote from Dyson, it essentially says that the petitioner is entitled to equitable tolling only if she has been pursuing her rights diligently. Right. All right. And the district court is saying you have to show that it will be unconscionable. All right. And so the question I have in my mind when I looked at this is, is diligence filling out the form before the OHR, which has a place for you to indicate whether or not you are represented by counsel, and you fill out that form. Yes. And that becomes part of the case record. Sure. And then the EEO form 5 does not have a place for you to indicate or your client to indicate he's represented by counsel. But you fill in or your client fills in the name of the attorney, his name, and then he says, you know, care of the attorney, gives the attorney's telephone number, address. If I may just quickly. Yeah. So I just want to understand what the standard is, what's the correct legal standard here. This case is different than the other cases. And you obviously could have done more, as Judge Randolph's question suggested, as some of the attorneys have done in these other cases. But the question is, under our standard, had you shown enough? I do not dispute that diligence is a standard. So Dyson does control in that regard. Yeah. My opinion, and I guess it's that I did exercise diligence because I communicated with the OHR. I told them I'm the counsel. I communicated with the OHR when I was, when I withdrew my complaint and asked them, do I need to communicate anything further with the EEOC in regards to the right to sue? And I think there's a joint, there's an email from there from the OHR and the joint appendix saying, no, you're done, you're finished. You just need to communicate. The next time you communicate with them, let them know when you want the right to sue. When did you next communicate with them? The next time I communicated with them was sometime around, I believe, around May of 2012, I believe. And that was a lapse of how long between communications? That was the first time I communicated with the EEOC. That was a lapse of how long between your communication with anybody on the government's side of the case? Well, I would say probably about six months. Six and a half months. Six and a half months. Is that a diligent pursuit of your contracts? Well, CJ, and again, I mentioned this in my reply brief. I tend to, and I think this is not very different for a lot of employment law attorneys, I tend to stagger my cases. And a lot of the time, these cases are also dependent on clients' income. If I'm going to request the right to sue, it means within 90 days I have to file a complaint. It means soon after, discovery is going to commence. A lot of the times, my clients tell me, I know 300 days has passed. Is that a yes or a no to my question? If the judge's question is did I communicate? Was that a diligent pursuit of the rights involved here under the standard of the Dyson case? I believe it is. You think it is? Can I direct you to what I consider a gap in both your brief and your opponent's brief? The statute of limitations here is by statute. It's not regulation. The statute was passed in 1964. In order to get any kind of relief from the statutory deadlines, there's something that has to be done. Courts just don't have the authority to revise federal statutes and say, well, Congress said you have 90 days to sue. We think that's too short. You should have 110. We can't do that. The whole theory behind the equitable relief is that when Congress enacted the statute in 1964, it also took into account the doctrines that existed in 1964 allowing for postponement of the statutory deadline. And so the point that's missing from your brief and from your opponent's brief is what was the law regarding equitable tolling in 1964? And do you fit within any of those doctrines that were then recognized? It's not good enough to say that the 11th Circuit decided this in 2012 and we decided this in 2011. That's not the question. The question is what was the law in 1964? And we have ‑‑ there are six Supreme Court cases saying just that. They're fairly recent. And we also decided that in a case called National Association of Manufacturers versus NORB. And I'll give you the citation. It's 717, Fed 3rd, 947 at 961. Now, it's a little bit unfair to hit you with that because I don't expect you to have in your brain what the law was in 1964. But I've taken a look at it and I don't find any doctrine that existed back in 1964 that even comes close to covering the argument that you make here for equitable tolling. I'm certainly not aware of that case. The court is right. But I think the Coleman decision from the 4th Circuit deals with similar facts as in the present. I have to concede that the Court of Appeals has not picked up ‑‑ the other courts of appeals have really not paid any attention to the nuance that I've just described. I mean, they've really just gone, you know, whatever, we'll make up our own equitable tolling. But that's not good enough because you're dealing with a statute here. And we're dealing with basically statutory interpretation. That's what this is all about. Did Congress intend to give you a break, a postponement, in the situation that you described when it enacted the statute in 1964? So we know the Supreme Court has said equitable tolling applies to the 90‑day period. Yes. That's urban, right? Yes, yes. That's cited.  But the question is what is equitable tolling? Judge Randolph is focusing on the question of what was equitable tolling in 1964. When I read the brief for the appellee, I didn't see that that's what he was contesting. Rather, he cited our case in Dyson, saying you didn't meet that. And there are a number of things that the briefs don't address. But as this case comes to us, this is what we're looking at. I'm really not in a position to comment about a case in 1964. In the law of this circuit, as to what is equitable tolling, an appellee cited our case as to what the law is. And that is different than what the district court was citing, as to what your burden was. So my question was, I know you said you didn't want to take time distinguishing the cases on a factual basis. That's what you said in your reply brief. But this was a legal point. And, in effect, your opponent fed it to you. And you ignored it. And, Judge, my position on this is that I'm not disputing that Dyson does not apply. It certainly does. My contention is that, simply that, we were diligent. I understand. Your contention is regardless of the legal standards. Exactly. You were diligent. I was diligent, exactly. But the argument is made that all these other cases you cite, more was done than either you or your client did. Well, in all those cases, also, it was the attorney communicating directly with the EEOC. There never was a state counterpart. So, which was why I distinguished those cases. In the cases which I cited, or, well, in my facts, my first point of contact was not the EEOC. My first point of contact, and, frankly speaking, the only point of contact, was the Office of Human Rights. And I'm legally, I'm certainly, you know, given the option to either file a complaint with the Office of Human Rights or the EEOC, I chose the former. It's like I mentioned in the reply brief. If my communication and my first point of contact would have been with the EEOC, I probably would not have been here. Because the EEOC clearly had knowledge of my legal representation, just like they overcharged it. All right. But I read the district court also to say he was proceeding on the assumption that EEOC knew that Mr. Maggio had an attorney. Yes. And he went on to say that the problem the district court found was that your client never directed these agencies to communicate solely or even duly with counsel. And that simply listing counsel on a form did not excuse your client's statutory obligation. And there the district court's referring to a regulatory obligation. And that's where I disagree with the court. Because among other things, like the judge pointed out. No, he's talking about your client's obligation to keep the agency current on his address. I thought the issue in there was did we communicate to either agency, the OHR or the EEOC, in regards to legal representation? And on the issue of communicating with either agency, in this case the OHR or the EEOC, we certainly did communicate, certainly to the OHR, here's my lawyer, here's the point of contact. Would you agree that if your client had, in fact, followed the regulations and communicated with the EEOC about his change of address, that there would be no problem? Perhaps. And the only reason I say perhaps is because my client really did not have a permanent address at that time, considering his familial circumstance. Was he getting mail somewhere? I'm sorry? Was he getting mail somewhere? Was he receiving mail? Yes. You know, postal mail? Yes, yes. He was, so he had an address. It was a postal address. He did have an address. He did have an address. He did not give that to the EEOC, right? Not when he moved to South Carolina, he didn't. Now the cases you cite from the Fourth and Eleventh Circuit reference the Internal Operating Manual of the EEOC. And that manual says that EEOC is supposed to send the notice to both the client and the attorney. So here, if we're going to talk about regulatory obligations or internal operating procedures, there appears to have been a problem with EEOC as well. Absolutely, because I did not get the notice. Did you ever give EEOC your representation information? It's on the Form 5, Judge. That Form 5 is the district form, right? Did you ever give EEOC that information? When I was told by the EEOC around May that they had no knowledge of my legal representation, that's when I informed them. Did you ever, before the events we're litigating about here, give your representation information to EEOC? No. Wait, counsel, the record says you did, all right, in the EEO Form 5. In the Form 5, yes, I did. You listed Esquire and your name and your address. That was on the EEOC Form 5. Absolutely. And the district court proceeded on the basis that EEOC knew your client had counsel. But, as I said, the district court said there were two problems. One, that simply listing counsel wasn't enough, but the district court gave no cite for that at all and did not reference the EEOC internal operating manual requirement. And then, but he goes on citing a case from the Eighth Circuit and the case you rely on, Coleman, that your client never directed these agencies to solely communicate or even duly communicate with his counsel. So I thought you were taking issue with those factual findings. I was, and when I was answering Judge Sintel's question, I thought the question was did I pick up the phone. I thought you were referring to the district form, but Exhibit 3 is not what you're referring to. Yes, exactly, Judge. So, yes, going back to, and perhaps I've lost count of the proper question. But, yes, so I guess there's also a secondary mistake by the EEOC. Considering I was listed on the Form 5, no notice was sent to my office until I communicated with them in May saying, where's the right to sue? And at that point, the EEOC's answer was we had no idea you were even the counsel of record. And, of course, in the Form 5, it clearly states that. Now, you know, I guess beginning with the question that kind of started off this, is there any part of the EEOC form, like the OHR form, that ticks off a box or something, somehow indicating that the party is represented by counsel? Well, it's not, which is why I had to kind of type it in right next to my client's name. The statute of limitations seems to assume that the individuals who receive the right to sue notice are not represented by counsel. I don't know if you've gone back and looked.  And the reason I say that is because it says that if, after issuing the right to sue notice, the individual can't afford an attorney, he may have one appointed, which seems to assume he doesn't have one at that time. But this internal operating manual, did you cite that in your brief? I must have missed it. On the workshop agreement? No, it's only cited in the Fourth Circuit and Eleventh Circuit cases. You never argued that in the district court, did you? Did I argue about the workshop agreement? Some internal operating manual of the EEOC. Yes, I did. I did cite it in the workshop agreement. No, he's talking about the EEOC internal operating manual. No, I did not. You did not argue that, and you didn't argue it in this court either. No, I did not, yeah. All right, why don't we hear from counsel Farag Khalil. Thank you very much. Thank you. Good morning, and may it please the Court. Alan Block on behalf of the Wisconsin Avenue Psychiatric Center, Incorporated. I want to begin by reviewing some of the factual issues here, but first responding to some of the Court's concerns as I understand them from appellant's time a few moments ago. In that regard, the record is clear from Mr. Aggio's affidavit that he filed to oppose the motions in the lower court that, quote, I moved back, close quote, to his family home in South Carolina in April of 2012. So is it your position then that that disqualifies or makes him ineligible for equitable tolling? Ineligible in a vacuum, Your Honor, I'm not certain. It certainly shows or sets the predicate for his lack of diligence. At the outset, when he goes to the OHR on May 11th of 2012, he's already giving them inaccurate information by virtue of the fact that he had moved, and notwithstanding the fact that he moved in April, he tells them in May, I'm at the Rodman Street address in D.C. So that, the Rodman Street statement was inaccurate. Correct. The statement about his counsel's name and address and telephone number was accurate. I believe that is his counsel's name and address. What legal effect do you say there is to the Form 5 that says Matthew Maggio Kirov A.J. Dolly at the counsel's address? I think that may be up for interpretation, Your Honor. What interpretation is it you're going to tell me about that? I sort of thought it might be up for interpretation if I asked you what legal effect you place on it. I understand that, Your Honor. Proceed, then. I think under the applicable law and under what actually guides the EEOC, their obligation is to provide notice to the plaintiff himself. They may be obliged to provide notice to counsel upon direction from counsel. The statute says they have to provide notice to the aggrieved person. That would be the plaintiff himself, Your Honor. That is our interpretation, and that is what they did. So they were just supposed to ignore the Kirov A.J. Dolly Esquire at the given address? Your Honor, I'm not certain what they were supposed to do with that, but I know they were supposed to notify the plaintiff, which they did. Did that in some fashion prevent them from sending it to both addresses? I don't know. There's nothing in the record to suggest or say one way or the other. But the salient point here does go to the record, and that is while plaintiff contends that on May 11th, here is counsel informed the EEOC to provide communications only through counsel, there's nothing of that nature in the record. In fact, by plaintiff's own affidavit, his second affidavit. I'm sorry, it's his first affidavit. He says, and this is the best evidence he has to support that contention. He says, quote, it was reasonable to assume that a notice to sue would be sent to counsel. And that's a closed quote. There is no evidence from plaintiff, and he certainly could have drafted his affidavit to say we told OHR to send only counsel, but he did not. That is only contention found in argument. There is no record of it in plaintiff's affidavit. There is no affidavit from either agency. There is no correspondence to either agency or no e-mail or anything else that supports that contention. So as to the OHR form, which I'll call the OHR form 5, it does have a place to list whether you are represented by counsel. I believe so. Well, that's in the record. And he filled that out and put his attorney's name, address, and telephone number. So OHR had notice he was represented by counsel. That doesn't change the notification obligation with respect to the EEOC's right to sue, and that's what we're talking about here. The facts actually, and Mr. Maggio's representation by counsel actually turns against him in this instance. And the reason why that is is because with counsel, as lawyers are, they know or should know that if you're providing information or doing something that's going to impact the rights of your client, you're going to do that in writing. There should have been, if there was some direction or request for the EEOC or OHR to communicate only with counsel, that's something that lawyers do. I understand that. In these other cases, counsel has done it. And the only question I had was, well, counsel hasn't done it, but it's on the form in writing. That does not get them there in the cases. So these cases that said where the client told the agency, communicate only with my lawyer, that's contrary to the statute, which says they're supposed to communicate with the client. I mean, that can't be the law. Well, Your Honor, the statute does provide that limitations period, but the law as we've seen it develop, notwithstanding Judge Randolph's commentary with respect to that National Associates of Manufacturers case, the case law provides for this equitable tolling element to save claimants from that statute. That's where that comes in. I mean, this is such an odd case to me in the sense that as Judge Randolph's comment about if you don't have counsel, counsel will be appointed for you, that if he hadn't had counsel, he would get the benefit of all these doctrines. Because he hired counsel, all right, that's causing him not to be diligent. Your Honor, he might have gotten the benefit of those doctrines, but there's nothing in the record to this case that suggests there is any evidence to actually give him that benefit, because there was nothing done. In fact, it's worse. So filling out the form is not enough. Correct. And it's worse because the information plaintiff himself provided at the outset was inaccurate information. He gave you the wrong address. I understand your argument, but it is an odd situation where you show up with counsel and counsel is to be ignored thereafter, even though you filled out on the form that you're represented by counsel. I mean, I'm sure the President of General Motors, when he shows up at a meeting with counsel, doesn't expect to get the letter. I mean, that's all I'm getting at here. Unless he goes to EEO, then. Unless he goes to EEO, and then he gets the letter. I think I understand the Court's point. I think from our perspective, though, that doesn't advance plaintiff's claim in the context of this appeal. I understand. All right. What would you say to my question about the court, the district court, relying on the unconscionability standard? I think that's consistent with the case law in this jurisdiction, although not quoted in Dyson, obviously. But if the court looks at Dyson, it has those clear two factors of— No, you put that in your brief, but it doesn't embrace the unconscionability standard. I mean, to be unconscionable, to allow this to go forward, that's where the 11th Circuit is. That's not where we are. I understand. And I don't know where we were in 1964, all right? But at least right now. And right now, I think if the court looks at the Dyson standard— Yeah. If the court looks at the Dyson standard and compared to the facts and record in this case, the district court was correct in its determination. Yeah. This comes to us after summary judgment. Am I right? Motion to dismiss. So we can take it de novo and apply the proper standard without having to send it back for— That is where I was going with that. But your point is there's no evidence, and I mean that in a straight sense. There's no evidence that there was any communication to either agency that the agency should communicate only with counsel. That is correct, Your Honor. That is absolutely clear from the record. And that is, if I may, the crux of what—the crux and thrust of the plaintiff's entire appellate argument here, because there's no dispute that nothing else was done on the plaintiff's part other than wait. And to Judge Sentelle's question, by our calculation, that gap was the last communication with the OHR in July of 2012 with regard to that withdrawing the OHR claim. And then it wasn't until May of 2013, early May, that plaintiff's counsel then reaches out to the EOC. That, by our calculation, is 11 months. Yes, the 6 1⁄2 was an error, and that's the gap from when the right to sue letter actually went out until you heard from the fee. Since they didn't get the letter, that's not in your name. The right to sue letter went out in November, and the next that the plaintiff was heard from via counsel to the EOC was May. This is clearly a case where plaintiff was not pursuing his rights diligently. There is no extraordinary circumstance that stood in his way to timely file his suit. The errors here were his own. There's no evidence, and the Court sees those cases where plaintiffs are credited and gain the equitable tolling benefit, where there's some affidavit or some error or some fault of the agencies, and there's no such information here. You don't see anything from the agency at all. And, in fact, again, when you look back at plaintiff's best evidence, that evidence doesn't even say we told them only counsel or we told them plaintiff and counsel. It's not there. And that requirement comes from where? I'm sorry? The requirement to say contact only my counsel. Well, that's not a requirement, but if you want to have the benefit or the potential benefit of having you and your counsel notified, you have to have something in terms of a communication that's validated in the record. Unless you know that EEOC employees are under an obligation in their manual to send notices. I don't believe that would save them in this context, Your Honor. Okay. And why? Well, number one, the manual's not binding on anyone. It's a manual. Number two. I know, but it's EEOC telling its employees how to proceed. That's all. I'm not trying to say you could – we're in equitable tolling here. I think even if plaintiff were to have argued that, which he didn't, I would argue, therefore, it's waived. If he were to argue it, it doesn't excuse the lack of diligence. You still have to be diligent. It's not – you don't have to be diligent if you're going to rely on the EEOC manual. And this record is devoid of any of that. I'm concerned about the notion that if you have counsel, you're not diligent. I mean, I'm not suggesting he didn't have an obligation to keep his address updated, but he had counsel. I understand Your Honor's concern in that regard. Yeah. But in this case, you have counsel, and counsel's not diligent. Yeah, that's a good issue. There's no diligence. Yeah. Anything further? No, thank you. Thank you very much. All right. Counsel for appellant. Give you a minute. Quick one-minute rebuttal. On the issue of there being no evidence that we communicated with OHR, that's just simply false. Joint Exhibit 52. Ms. Martin, that's not my handwriting. It's Ms. Martin's handwriting, inputting my e-mail address and circling my phone number. Joint Exhibit 52. So there's the evidence, not to mention I physically went there. I personally do not know what else I could have done. Well, you could have written a letter. To the OHR? Well, to the EEOC. And see, we did try. But the question now is EEOC. And it seems what the court's getting at, and perhaps in the future, because, first of all, from a practical standpoint, once you communicate with the OHR, the EEOC is not necessarily interested in communicating with you. They deal with the OHR. But you knew you were through with OHR. And you knew the EEOC was the agency you had to deal with. Absolutely. Yes, I knew that. And I saw the Form 5, and I go, my name is listed. Clearly, this is the Equal Employment Opportunity Commission. But the counsel's point, as I understood it, was that there was no evidence that either agency was told by you or your client, communicate with my lawyer. It's not that you were representing them or not. On the contrary. The question is whether the EEOC was told to communicate with you. And the answer to that is no. There's no evidence that that ever occurred. There's certainly evidence of the communication through OHR. I was there. I told them that. Yeah, but that's not evidence. You didn't file an affidavit, did you? No, I did not. Did your client file an affidavit for that? No, I didn't. So it's not evidence. It's just argument. Anything further? Nothing. All right. Thank you very much. We'll take the case under advisement.
judges: Rogers, Sentelle, Randolph